**RAFAEL D. MIRANDA**
913 North Eastman Avenue
Los Angeles, California  90063-2111
Telephone No.:   (213) 810-0745
Facsimile No.:   (213) 810-0745
E-mail:  davidr_miranda@msn.com

Plaintiff *In Pro Se*, **RAFAEL D. MIRANDA**

FILED
CLERK, U.S. DISTRICT COURT

3/24/21

CENTRAL DISTRICT OF CALIFORNIA
BY:      SE           DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL D. MIRANDA, as Individual, | CASE  NO. 2:20-cv-05527-ODW-KES |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR THEFT OF TRADE SECRETS, MISAPPROPRIATION, AND UNFAIR COMPETITION:** |
| v. | ( 1 )   VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C, § 1836; |
| KENT THIRY, as Individual; DAVITA, INC., a California Corporation; HEALTHCARE PARTNERS, INC., a California Corporation; and DOES 1 TO 50, INCLUSIVE, | ( 2 )   MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA LAW; |
| Defendants. | ( 3 )   MISAPPROPRIATION OF IDEAS UNDER CALIFORNIA LAW; |

1

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition



| | ( 4 ) | UNFAIR COMPETITION UNDER CALIFORNIA LAW; |
| ) | ( 5 ) | MISAPPROPRIATION OF SKILLS AND EXPENDITURES UNDER CALIFORNIA LAW; |
| | ( 6 ) | UNDUE ENRICHMENT |
| | ( 7 ) | DECLARATORY RELIEF; |
| | ( 8 ) | RESCISSION |
| | ( 9 ) | FOR FRAUD FOR INTENTIONAL MISREPRESENTATIONS |
| | (10) | FOR NEGLIGENT MISREPRESENTATIONS |
| | (11) | BREACH OF FIDUCIARY DUTY |
| | (12) | CONSTRUCTIVE FRAUD |

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT FOR THEFT OF TRADE SECRETS, MISAPPROPRIATION, AND UNFAIR COMPETITION

Plaintiff Rafael D. Miranda, ("MIRANDA"), by and through  it to be named undersigned counsel, files this First Amended Complaint against Kent Thiry, ("THIRTY"),  DaVita, Inc., ("DAVITA"), and HealthCare Partners, ("HCP").    In support thereof, MIRANDA states as follows:

## NATURE OF THE ACTION

1.    This is a case about a big business stealing from a small business.

Before it had three (3) telephone interviews in an "electronic recorded" deposition conducted by DAVITA's Assistant General Counsel and court's certified reporter of answering multiple questions based upon plaintiff's alleged wrongdoing findings and financial opinions written in that 7-Page confidential/ privileged and "anonymous" correspondence, MIRANDA had no trade secrets for the creating corporate institutional shareholders' value in millions of U.S. dollars. Having gotten what it wanted from MIRANDA, THIRY and DAVITA brushed MIRANDA aside. These facts give rise to claims for trade secret misappropriation arising under the Defend Trade Secrets California Act, for trade secret misappropriation and related wage claims under California trade secrets, misappropriation, and unfair competition laws.

2.     This action relates to THIRY and DAVITA's theft by improper means of MIRANDA's confidential, proprietary, and trade secret information relating to its proprietary written financial opinions that generates corporate institutional shareholders' value in millions of U.S. dollars.     On October 1, 2018, Plaintiff learned that a million dollar shareholder settlement was reached between HealthCare Partners and Denver-based company DaVita, Inc., based upon plaintiff's trade secrets, which corporate acquisition escrow funds were set aside by both parties to cover any future expenses and damages before DaVita acquired HCP and its assets in 2012, *American City Business Journals* states.   To date, THIRY and DAVITA has refused to acknowledge plaintiff's valuable trade secrets nor compensate him outside the scope of his employment at DaVita.     As set forth below, MIRANDA has been significantly and irreparably injured as a result of THIRY and DAVITA's conduct.

3.     All allegations herein directed to information not in MIRANDA's possession, custody, or control are made on information and belief.

## PARTIES

3

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

4.      Plaintiff **Rafael D. Miranda** ("**MIRANDA**") is a resident and
citizen of the United States, the State of California, and of this District.

5.      Between September 2008 and June 2016, MIRANDA was employed
by DaVita, Inc. and HealthCare Partners Medical Group (corporate entity renamed
as: DaVita Medical Group).      In 2011, Plaintiff has completed his Masters of
Business of Administration (MBA) in finance, accounting, and corporate merger &
acquisition studies with prior managerial professional experience at several of the
Fortune 500 Companies in Private Medicare Part B Contracting business for
governmental client Center of Medicare and Medicaid Services (CMS) in the State
of California.   He is unlicensed Certified Financial Analyst (CFA) and does not
maintain any license in the State of California.   Please note, he is in the processing
of completing his CFA examinations to acquire his license.

6.      Defendant **Kent Thiry**,  ("**THIRY**") is an individual residing in
the County of Los Angeles and is a result and citizen of the United States, the State
of California, and of this District.

7.      Defendant **DaVita, Inc.,** ("**DAVITA**") is and was a corporation
formed under the laws of the State of Delaware, and transacted business in, among
other places.  Defendant DAVITA, is and was a corporation formed under the laws
of the State of California, and transacted business in, among other places.
Defendants DaVita and DaVita Medical Group are business entities, form
unknown, that transacted business in, among other places.   Defendants DaVita
and DaVita Medical Group are corporations formed under the laws of one or more
states of the United States, and transacted business in, among other places.

8. -     Defendants HealthCare Partners, HealthCare Partners Medical Group,

4

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair
Competition

and HealthCare Partners Independent Physician Association (collectively, **"HCP"**) are business entities, form unknown, that transacted business in, among other places. MIRANDA is informed and believes, and upon such information and belief alleges, that during the pendency of this action (a) defendant HealthCare Partners merged with and/or is now known as DaVíta Medical Management, LLC, and (b) defendant HealthCare Partners Medical Group merged with and/or is now known as DaVita Medical Group California, Inc. All entities referenced in this paragraph are collectively referred in this Complaint as "HealthCare Partners."

9.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore, Plaintiff sues these Defendants by such fictitious names. Plaintiff will amend this First Amended Complaint to allege the true names and capacities of said Defendants when the same have been ascertained.

10.    Plaintiff is informed and believes, and thereon alleges, that Defendant Does 1 through 50, inclusive (collectively, the "Doe Defendants"), are responsible in some manner for the events, occurrences, obligations, and liabilities alleged herein, and for the damages and losses incurred by Plaintiff.

11.    At all relevant times mentioned herein, each of the Defendants was the agent and employee of each of its co-defendants and, in doing the things mentioned, was acting in the course and scope of its authority as an agent of employee, and with the authorization, permission, and consent of its co-defendants.

### General Allegations

12.    On or about May 8, 2014, plaintiff MIRANDA personally filed an 7-Page confidential/ privileged and "anonymous" correspondence, entitled, "*Re: HCP Employee, David R. Miranda's Request to Investigate Possible Criminal*

5

*Offenses, Pursuant to Federal False Claims Act,"* dated May 8, 2014 to: DAVITA
**Craig Samitt**, President & CEO of DaVita HealthCare Partners, LLC and **Kent
Thiry**, co-chairman and CEO of DaVita HealthCare Partners, Inc., based upon
employment condition of reporting alleged corporate wrongdoing anonymously to
DaVita corporate compliance hotline and/ or any executive officer of DaVita.   In
fact, MIRANDA complied with DaVita's Compliance Policy of reporting alleged
good faith corporate wrongdoing without facing any form of actionable retaliation
while employed at DaVita.

13.     In plaintiff MIRANDA's 7-Page confidential/ privileged and
"anonymous" correspondence dated May 8, 2014, it stated that: "*DaVita employee
is voluntarily disclosing the following **alleged criminal acts of securities fraud**,
unfair billing Medicare practices, **accounting irregularities**, conspiracy to
defraud the United States Government, unfair Medicare payment patterns,
tampering with a Government database, and conspiracy to defraud DaVita
Company, pursuant to 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1001 (False
Claims Act), and **Securities Fraud**, respectively.*"   Attached hereto as **EXHIBIT
4** is true  and  correct copy of 7-Page confidential/ privileged and "anonymous"
correspondence, entitled, "*Re: HCP Employee, David R. Miranda's Request to
Investigate Possible Criminal Offenses, Pursuant to Federal False Claims Act,"*
dated May 8, 2014.

14.     Further, in his MIRANDA's 7-Page confidential/ privileged and
"anonymous" correspondence,  it also stated that: "***the purpose of this good faith
reporting it to recover DaVita's  stolen corporate funds in the amount of: $ 4.42
billion for the overpaid merger purchase price of Torrance-based HealthCare
Partners and its assets on September 30, 2012**, to protect DaVita's corporate*

6

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair
Competition

*reputation and good will, and to protect our jobs at DaVita.*"

15.    From May 1, 2014 through August 30, 2014, DAVITA Senior Management conducted three (3) telephone interviews with MIRANDA through their DaVita Office of Special Counsel located at 2000 16st Street in the City of Denver, Colorado 80202.   The form of these three (3) telephone interviews were conducted in an "electronic recorded" deposition of answering multiple questions based upon my alleged wrongdoing findings and financial opinions written in that 7-Page confidential/ privileged and "anonymous" correspondence dated May 8, 2014.   MIRANDA answered every question in a truthful manner with the employment condition that actionable retaliatory acts against my professional character and reputation will not permitted, pursuant to DaVita's Retaliation Policy while employed at DaVita.   Plaintiff was personally interviewed by Assistant General Counsel, Chandra Westergaard, Esq. of DaVita Office of Special Counsel. Company's Counsel contact information as follows: DaVita HealthCare Partners, Inc. 2000 16st Street in the City of Denver, Colorado 80202, Direct: (303) 876-6505, E-fax: (855) 675-6505, E-mail: Chandra.Westergaard@davita.com.

16.    Thereafter, MIRANDA personally witnessed at the Torrance-based corporate office that DaVita Senior Management hired a leading accounting firm, KPMG and their auditors to audit HealthCare Partner's financial statements, such as Income Statements, Balance Sheets, and Statement of Cashflows prior to completing September 30, 2012 merger acquisition date and to prove MIRANDA's alleged financial findings and financial theory of HealthCare Partner's liquidity insolvency issues through their *defunct* and *near-bankrupt* Medical Group acquisitions.

17.    In addition, HealthCare Partners Senior Management and its outside

7

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

accounting firm alleged conspiracy to hide their insolvency or low cash reserves prior to completing September 30, 2012 merger acquisition date to defraud DaVita, Inc., its Senior Management, and its institutional investors by overpaying the merger purchase price in cash transaction. As a result, DaVita's outside accounting firm allegedly discovered all accounting irregularities in HealthCare Partner's financial statements, such as Income Statements, Balance Sheets, and Statement of Cashflows and MIRANDA's financial theory of HealthCare Partner's liquidity insolvency issues were valid and truthful statements made by independent financial consultant/ plaintiff. MIRANDA has also reason to believe that DAVITA's financial statements with corporate merger with HCP were reinstated with the Securities and Exchange Commission (SEC) and remained in secrecy and non-public information based upon MIRANDA's valuable trade secrets.

18. On February 15, 2015, MIRANDA filed an Application for Award for Original Information in regards to DaVita HealthCare Partners, Inc., with U.S. Securities and Exchange Commission via U.S. Certified mailing. Attached hereto as **EXHIBIT 5** is true and correct copy of plaintiff's 1-Page correspondence dated February 15, 2015 regarding Federal Confidential Whistleblower David R. Miranda's Application for Award for Original Information Submitted addressed to: Office of the Whistleblower, U.S. Securities and Exchange Commission, Washington, DC 20549 via U.S. Certified mailing.

19. On May 31, 2016, a Termination of Employment Notice was issued by DaVita employee Diane Erickson with false allegations that MIRANDA failed to follow established Company Policy. According to DaVita employee's

8

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

fraudulent findings, MIRANDA continued to make false accusations about his

fellow teammates and leaders at HealthCare Partners.   The true facts were based

that above-named DaVita employee maintained a conflict of interest issue  to

protect the professional reputations of other DaVita employee named as:  Sonyl

Echols and Shirley Calloway.

20.    On June 6, 2016, MIRANDA received an electronic mail ("E-mail")

from DAVITA's executive officer Richard A. Hosley, Vice President - Office of

Special Counsel, Associate General Counsel, DaVita HealthCare Partners, Inc.

Denver, Colorado 80202.    In that electronic mail, it stated that:  "I am the Vice

President of the Office of Special Counsel and Ms. Westergaard's supervisor. **I

have received your email request for a separation payment.  I understand

that a sum was previously proposed, but you are unhappy with that offer.

We are taking this matter seriously and are thoroughly reviewing the issues

you raised.  We are also considering your request for additional

compensation**.  A DaVita representative will be in touch with you in the very near

future to discuss in more detail."   Attached  hereto as **EXHIBIT 6** is true   and

correct copy of defendant 1-Page electronic correspondence dated Monday, June 6,

2016 at 11:05 AM, Richard Hosley <Richard.Hosley@davita.com>via electronic

mail.

21.    On or about July, 2016, DAVITA Senior Management and CEO of

DAVITA terminated  DaVita Human Resources (HR) employee Diane Erickson's

job employment  for failure to comply with DaVita's Retaliation Policy and

Compliance Policy of reporting alleged good faith corporate wrongdoing without

facing any form of actionable retaliation and conflict of interest issues.   Further,

DAVITA Senior Management also learned that the above-named DaVita employee

9

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair
Competition

conducted multiple "mock" Company investigations of violations without interviewing any DaVita employee involved in the alleged incidents and failed to collect any evidence to support her fraudulent Human Resources (HR) corporate findings.

22.   On October 1, 2018, MIRANDA discovered that DAVITA unit to pay $ 270 million to resolve Medicare overpayment based upon plaintiff's written financial opinion trade secrets, *Reuters article states.* I have reason to believe that DAVITA concealed plaintiff's valuable financial opinion trade secrets for their corporate financial gains.   In fact, the DAVITA's market stock price was at: $ 59.98 as of October 17, 2016.   Today, their market stock price stands at: $ 109.83 as of March 21, 2021 based upon plaintiff's valuable financial opinion trade secrets.   Further, I have reason to believe that DAVITA signed a confidential Settlement Agreement, whereby $ 270 million will be paid for out of escrow funds of: $ 1.898 billion to cover an U.S. Department of Justice's (DOJ) Medicare Government Settlement that was required by HealthCare Partners' former owners to set aside when DAVITA acquired corporate entity and its assets in September 30, 2012 for $ 4.46 billion in cash and stock, (See SEC Form 10-Q: Page 17) Attached hereto as **EXHIBIT 9** and **EXHIBIT 10** are true and correct copies of American City Business Journals Article dated October 1, 2018 and DAVITA's SEC FORM 10-Q For the Quarterly Period Ended June 30, 2018.

23.   On August 5, 2016, MIRANDA sent 5-Page Correspondence dated August 5, 2016 regarding entitled, "*DaVita HCP Employee, David R. Miranda's Reply to DaVita's Counsel of Record's Letter,*" addressed to: DAVITA's outside counsel Dawn M. Irizaary, Esq., via U.S. Certified mailing.   In that letter,

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

MIRANDA replied to DAVITA's outside counsel on the grounds of contractual rescission of that Separation & Release Agreement dated June 16, 2016.  Further, MIRANDA asserted his entire rights, titles, and interests in and to his copyrights, trade secrets, and other intellectual property rights on his 7-Page confidential/ privileged and "anonymous" correspondence dated May 8, 2014, entitled as: *"Re: HCP Employee, David R. Miranda's Request to Investigate Possible Criminal Offenses, Pursuant to Federal False Claims Act."*   Attached hereto as **EXHIBIT 7** is true  and  correct copy of 5-Page Correspondence dated August 5, 2016 regarding entitled, *"DaVita HCP Employee, David R. Miranda's Reply to DaVita's Counsel of Record's Letter."*

24.   On the same date, MIRANDA sent 3-Page Correspondence dated August 5, 2016 regarding entitled, *"DaVita HCP Employee, David R. Miranda's [First] Demand to Return Employee's Property or To Pay Reasonable Consulting Fee,"*  addressed to: DAVITA's outside counsel Dawn M. Irizaary, Esq., via U.S. Certified mailing.   In that letter, MIRANDA demanded return of Employee's Property in their client's possession, description as: "original-copy" 7-Page confidential/ privileged and "anonymous" correspondence dated May 8, 2014, entitled as: *"Re: HCP Employee, David R. Miranda's Request to Investigate Possible Criminal Offenses, Pursuant to Federal False Claims Act,"* **or pay me a reasonable consulting fee.**  To date, DAVITA's outside counsel failed to respond to plaintiff's demand to return Employee's Property.   Attached  hereto  as **EXHIBIT 7** is true  and   correct copy of  3-Page Correspondence dated August 5, 2016 regarding entitled, *"DaVita HCP Employee, David R. Miranda's [First] Demand to Return Employee's Property or To Pay Reasonable Consulting Fee."*

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

25.    On August 16, 2016, MIRANDA discovered about Securities and
Exchange Commission (SEC) *"Order Instituting Cease-And-Desist Proceedings to
Section 21C of the Securities Exchange Act of 934, Making Findings, and
Imposing a Cease-And-Desist Order,"* in the Matter of Health Net, Inc.,
Administrative Proceeding File No. 3-17396 issued on August 16, 2016, which
applies to that Separation & Release Agreement dated June 16, 2016

26.    On September 13, 2016, MIRANDA sent 5-Page Correspondence
dated August 5, 2016 regarding entitled, *"DaVita HCP Employee, David R.
Miranda's Response your 8/25/16 Letter,"* addressed to: DAVITA's outside
counsel Dawn M. Irizaary, Esq., via U.S. Certified mailing.    In that letter,
MIRANDA replied to DAVITA's outside counsel on the grounds of additional
contractual rescission of that Separation & Release Agreement dated June 16,
2016, pursuant to Securities and Exchange Commission (SEC) *"Order Instituting
Cease-And-Desist Proceedings to Section 21C of the Securities Exchange Act of
934, Making Findings, and Imposing a Cease-And-Desist Order,"* in the Matter of
Health Net, Inc., Administrative Proceeding File No. 3-17396 issued on August 16,
2016.    Further, MIRANDA **describes how HealthCare Partners and their
former owners had an on-going insolvency cash issues and utilizing Medicare
Part A (hospital) federal program as their "piggy bank" fraudulent
unnecessary hospital inpatient services and Medicare Advantage plans "risk
adjustment" payment schemes to finance their insolvency issues** in billions of
federal funds prior to merger acquisition with DAVITA in 2012, which were true
facts.    Attached hereto as **EXHIBIT 8** is true  and  correct copy of 5-Page
Correspondence dated August 5, 2016 regarding entitled, *"DaVita HCP Employee,
David R. Miranda's Response your 8/25/16 Letter."*

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair
Competition

27.    MIRANDA is also entitled to recover his attorneys fees, costs and expenses from defendants.

### The Separation & Release Agreement

28.    On June 16, 2016, defendant/ employer DAVITA and plaintiff/ outside financial consultant employee MIRANDA settled the separation lawsuit and DAVITA prepared Separation & Release Agreement (the "Settlement Contract").  In said 7-Page Separation & Release Agreement legal contract document, entitled, "Separation & Release Agreement" dated June 16, 2016, MIRANDA and DAVITA shall agree to the following terms and conditions:

29.    Section 8 (Time to Consider Agreement: Revocation Provision), it states that:    **"Time to Consider Agreement: Revocation.**
Employee acknowledges that he has at least twenty-one (21) calendar days after the receipt of this Agreement to consider signing it, and that he may voluntarily choose to waive this 21-day period.   In addition, Employee has seven (7) calendar days after signing the Agreement to revoke it, in which case this Separation Agreement will be null and void.   Any such revocation must be in writing and be submitted to Metta Schneider, Vice President of People Services for Employer - 2175 Park Place, El Segundo, CA 90245.  Employee understands that if signs this Agreement and does not revoke the Agreement within 7-calendar days after signing, this Agreement will become full effective and enforceable ("Effective Date").

30.    Plaintiff has performed all the acts, services, and conditions required by the contract to be performed on his part.   In addition, plaintiff returned settlement  check along with Notice of Revocation (Contractual Rescission) dated June 17, 2016 to defendants within time allowed.   Later, that

13

settlement check was returned back to plaintiff by force by regular U.S. mail.

To date, outstanding underpaid regular wages due in the total amount of: $ 47,478.42 (From 9/23/2013 through 5/31/2016) including legal rate of interest and penalties by defendants, which partial proceeds from settlement check were deducted from plaintiff's financial accounting records. In addition, on June 8, 2017, MIRANDA has received a Settlement Check No. 0076431772 for $ 20,000 to cover California Workers' Compensation injury claim filed July 26, 2015 from DAVITA and one Sedgwick Claims Management, Inc., was also a contested claim by defendants.

31.    This Contract does not contain specific legal language to cover the federal issues discussed in this lawsuit, namely Federal violations of Rule 21F-6 under the Securities Exchange Act of 1934 and Title 31, United States Code § 3730 of the False Claims Act of 1978 as protected by federal law.

32.    On July 21, 2016, DAVITA breached the Separation & Release Agreement dated June 16, 2016 with Plaintiff MIRANDA by refusing to acknowledge receipt of that Notice of Revocation (Contractual Rescission) to Separation & Release Agreement in writing and returning back that settlement check by force by regular U.S. mail.

33.    On October 1, 2018, DAVITA also breached successively the Separation & Release Agreement dated June 16, 2016 with Plaintiff MIRANDA by failing to disclose among other that: ( 1 )  DAVITA and their executive officers successfully entered into a confidential Settlement Agreement with HealthCare Partners' former owners, whereby $ 270 million will be paid out of corporate acquisition escrow funds of: $ 1.898 billion to cover U.S. Department of Justice

14

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

(DOJ) Medicare Government Settlement of overpayments based upon

MIRANDA's trade secrets.   Further, DAVITA also reached a contract provision

in their confidential Settlement Agreement that the original corporate acquisition

purchase price of: $ 4.42 billion would be reduced at unknown amount based upon

contractual fraud, accounting irregularities, and breach of contract ¦ *and*

MIRANDA's valuable trade secrets.

34.     Due to Defendant's breach of contract, plaintiff has suffered

damages in the principal sum of $ 37,960,000 plus business losses, loss of personal

investment, interest, costs, and attorney fees.   Attached hereto as **EXHIBIT 1,**

**EXHIBIT 2,** and **EXHIBIT 3** are true   and   correct copies   of said 7-Page

Separation & Release Agreement dated June 16, 2016 prepared by DAVITA,

notarized Notice of Revocation (Contractual Rescission) dated June 17, 2016, and

3-Page Correspondence dated June 16, 2016 including proof of service by U.S.

certified mailing.

## JURISDICTION/ VENUE

35.     This Court has Jurisdiction in this proceeding pursuant to Contract

claims, and for supplemental jurisdiction of Plaintiff's state law claims because

these claims are so related to the claims within the Court's original jurisdiction that

they form part of the same case or controversy under Article 3 of the United States

Constitution.   Counts arising under contract, common law, contractual fraud and

the law of conveyances in real property are properly asserted under this Court's

pendent jurisdiction.

36.     Venue is proper in this district pursuant to generally and

whereby the contract  and a substantial part of the events and claims, the subject of

this suit, are situated here, and Defendants' address is within the forum state of

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair
Competition

California.

## CLAIMS FOR RELIEF

### Cause Action One - Violation of the Defend Trade Secrets Act, U.S.C. § 1836 et seq. Against DAVITA

37.    The allegations in paragraphs one (1) through thirty-six (36) are incorporated as though fully set forth therein.

38.    By committing the actions set forth herein, DAVITA has misappropriated and continues to misappropriate MIRANDA's trade secrets in violation of the Defend Trade Secrets Act, U.S.C. § 1836.

39.    MIRANDA owns and possesses confidential, proprietary, and trade secret information relating to its written financial opinions and business practices, as well as its methods for implementing the same using its confidential, proprietary, and trade secret business solutions, which include protocols, applications, techniques, processes, procedures, programs, and codes.

40.    MIRANDA's trade secrets relate to a product or service used in, or intended for use in, interstate commerce, as they are used in connection with MIRANDA's financial products and services, which are offered and used across the country.

41.    MIRANDA's expended substantial effort and capital in developing, maintaining, and possessing its trade secrets that it incorporated into its revolutionary process for creating corporate institutional shareholders' value.

42.    MIRANDA's has taken reasonable measures to maintain the secrecy of its trade secrets, including by limiting access to them, and by requiring confidentiality agreements and/ or disclaimer clauses from DAVITA's personnel that prohibit, among other things, unauthorized access and disclosure of

16

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition

MIRANDA's trade secrets.   MIRANDA's trade secrets cannot be properly acquired or duplicated because of the limited number of individuals who can access them, and because they are maintained entirely by MIRANDA personnel who are contractually obligated to maintain the secrecy of MIRANDA's trade secrets.

43.   MIRANDA's trade secrets derive substantial economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to MIRANDA, critical to the operation of MIRANDA's business, and, if available to others, would enable them to compete with MIRANDA to MIRANDA's detriment.

44.   DAVITA acquired MIRANDA's trade secrets by improper means starting no later than May 8, 2014, when THIRY disclosed MIRANDA's trade secrets to U.S. Department of Justice (DOJ) and U.S. Securities and Exchange Commission (SEC) with the expectation of secrecy.   DAVITA further acquired MIRANDA's trade secrets by accessing MIRANDA's restricted written financial opinions in 2014 and 2015.   In such instances, DAVITA knew or should have known that the trade secret was acquired by improper means.

45.   Separate and apart from the improper acquisition of MIRANDA's trade secrets, DAVITA has improperly disclosed and used, and continue to disclose and use, MIRANDA's trade secrets, without MIRANDA's express or implied consent.   In such instances, DAVITA knew or should have known that MIRANDA's trade secrets were acquired by improper means or under circumstances giving rise to a duty to maintain the secretary of the trade secrets or limit the use of the trade secrets.

46.   DAVITA's improper acquisition, use, and disclosure of MIRANDA's

First Amended Complaint For Theft of Trade Secrets, Misappropriation, and Unfair Competition