**O**

# United States District Court
# Central District of California

RAFAEL D. MIRANDA,

Plaintiff,

v.

KENT THIRY, et al.

Defendants.

Case № 2:20-cv-05527-ODW (KESx)

**ORDER GRANTING DEFENDANT DAVITA'S MOTION TO DISMISS [56] AND DISMISSING REMAINING DEFENDANTS**

## I. INTRODUCTION

Plaintiff Rafael Miranda is suing Defendants Kent Thiry, DaVita, Inc., and HealthCare Partners, Inc., alleging Defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, and asserting related state law claims. (First Am. Compl. ("FAC"), ECF No. 53.) DaVita moves to dismiss Miranda's Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. Dismiss ("Mot."), ECF No. 56.) For the reasons discussed below, the Motion is **GRANTED**.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

For purposes of this Rule 12(b)(6) Motion, the Court takes all of Miranda's well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

From September 2008 to June 2016, Miranda was an employee at DaVita and HealthCare Partners. (FAC ¶ 5.) On May 8, 2014, Miranda sent a seven-page correspondence (the "Report") to Craig Samitt, President and CEO of DaVita, and Diane Erickson, Manager of Employee and Clinician Services at DaVita. (FAC ¶ 12, Ex. 4 ("Report"), ECF No. 55.) In the Report, Miranda "voluntarily disclos[ed] . . . criminal acts of unfair billing practices, accounting irregularities, conspiracy to defraud the United States Government, unfair Medicare payment patterns, tampering with a Government database, and conspiracy to defraud DaVita" on the part of HealthCare Partners, (Report 1), an entity with whom DaVita was merging or had merged at the time, (FAC ¶ 14). The Report contains Miranda's detailed assessment of how HealthCare Partners had (1) made "ghost" Medicare claims, (2) deleted imaged Medicare/Medi-Cal claims and aging provider appeals; (3) tampered with or systematically cheated on health plan compliance audits; and (4) failed to report Medicare abuse and fraud to the appropriate government agencies. (Report 3–5.)

After receiving the Report, DaVita interviewed Miranda three times. (FAC ¶ 15.) Later, DaVita hired an accounting firm to audit HealthCare Partners' finances. (FAC ¶ 16.)

On May 31, 2016, Miranda's employment was terminated. (FAC ¶ 17.) As part of the termination, DaVita proposed a Separation & Release Agreement. (FAC ¶ 28.) Miranda initially accepted the agreement, (FAC ¶ 30) but on June 17, 2016, Miranda revoked his acceptance, (*id.*). DaVita refused to acknowledge receipt of the revocation. (FAC ¶ 32.)

On August 5, 2016, Miranda sent DaVita a five-page correspondence (the "Demand Letter") that demanded DaVita either return the Report or pay a consulting

fee. (FAC ¶¶ 23–24, Ex. 7 ("Demand Letter").) DaVita used the information in Miranda's reports in reaching and executing a settlement with the U.S. Department of Justice relating to Medicare overpayments. (FAC ¶ 22.)

Miranda alleges claims against Defendants for (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) misappropriation of trade secrets under California law; (3) misappropriation of ideas under California law; (4) unfair competition under California law; (5) misappropriation of skills and expenditures under California law; (6) unjust (styled as "undue") enrichment; (7) declaratory relief; (8) rescission; (9) intentional misrepresentations; (10) negligent misrepresentations; (11) breach of fiduciary duty; and (12) constructive fraud.

On January 25, 2021, Plaintiff dismissed HealthCare Partners and Thiry without prejudice.[2] (Notice Dismissal, ECF No. 35.) The operative FAC, however, appears to add Thiry and HealthCare Partners back into the action. (*See* FAC.)

DaVita now moves to dismiss each of Miranda's twelve claims pursuant to Rule 12(b)(6) for failure to state a claim. (*See* Mot.) Miranda opposes. (Opp'n Mot. Dismiss ("Opp'n"), ECF No. 63.)

## III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2] It is not clear whether Miranda properly served any Defendant before this date. DaVita appeared in the action to file its Motion to Dismiss, and service on DaVita (and only DaVita) was deemed proper by way of stipulation and Minute Order. (Min. Order 2, ECF No. 50 (deeming service of process on DaVita proper).)

555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## IV. DISCUSSION

As a preliminary matter, DaVita and Miranda each request judicial notice of materials on which the Court does not rely in resolving this Motion. (Def. Req. Jud.

Notice, ECF No. 57; Pl. Req. Jud. Notice, ECF No. 64.) Accordingly, each party's request for judicial notice is **DENIED AS MOOT**.

Miranda's first claim is for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. The DTSA creates a private right of action for misappropriation of a trade secret. *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020). Miranda's DTSA claims fails for two independent reasons: the statute of limitations has run, and Thiry fails to allege a trade secret.

## A. Statute of Limitations

The limitations period for a DTSA claim is three years. *See* 18 U.S.C. § 1836. It runs from the date when the plaintiff discovered, or by exercising reasonable diligence would have discovered, the misappropriation of the trade secret at issue. *Id.*

Here, Miranda describes his own August 5, 2016 Demand Letter as a "Demand to Return Employee's Property or To Pay Reasonable Consulting Fee." (FAC ¶ 24.) The Demand Letter itself indicates that "on June 15, 2016, [Miranda] discovered that [a] DaVita People Services managing agent" had a "fraudulent intent to steal employee's senior project contracting management consultant trade secrets and/or propriety information on performed consulting work outside his scope of employment at DaVita." (Demand Letter 2–3.) This indicates Miranda knew by June 15, 2016—or, at the very latest, by by the date he wrote the letter (August 5, 2016)—that DaVita had misappropriated his alleged trade secrets. (FAC ¶ 24.) Thus, his claim expired three years from that date, on August 5, 2019. But Miranda did not file his Complaint until June 22, 2020. His claim is time-barred.

Miranda disagrees and asserts that his DTSA claim did not accrue until October 1, 2018. (Opp'n 5.) This argument fails for two reasons. First, Miranda alleges October 1, 2018, to be the date that DaVita breached the Separation & Release Agreement. (FAC ¶ 33.) However, nothing in the FAC indicates what happened on this date to make Miranda aware of a claim of which he was previously unaware. Second, and more fundamentally, Miranda accused DaVita of misappropriation in his

August 5, 2016 Demand Letter, demonstrating he had knowledge of the alleged misappropriation by no later than that date. In May 2014, Miranda gave DaVita information that Miranda alleges was valuable to DaVita. (*See* Report.) Some time later, in August 2016, Miranda demanded payment for the information, and DaVita refused. Thus, Miranda knew no later than the date of DaVita's refusal to pay him that DaVita had "acqui[red] . . . a trade secret of another" by means Miranda alleges were "improper" (i.e., by benefitting from the information without having paid for it).[3] 18 U.S.C. § 1839(5)(A). That date was August 5, 2016, more than three years before Miranda filed his Complaint, making his claim time-barred.

**B. Trade Secret**

Even were it not time-barred, Miranda's DTSA claim fails because the information allegedly misappropriated does not qualify as "trade secret." To state a claim for trade secret misappropriation under the DTSA, a plaintiff must allege: "(1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret." *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012); *Cherokee Chem. Co. v. Frazier*, No. CV 20-1757-MWF (ASx), 2020 WL 8410432, at *3 (C.D. Cal. Dec. 14, 2020) (applying this definition to DTSA claim); *see also* 18 U.S.C. § 1836.

The DTSA defines "trade secret" as information that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information," 18 U.S.C. § 1839(3). To show information is a trade secret, a plaintiff must plead and prove three elements: (a) information; (b) which is valuable because unknown to others; and (c) which the owner has attempted to keep secret." *Brocade Commc'ns Sys., Inc. v. A10 Networks,*

[3] The Court assumes *arguendo* and solely for the purpose of the statute of limitations analysis that this is an appropriate interpretation of quoted language of the DTSA.

*Inc.*, 873 F. Supp. 2d 1192, 1212 (N.D. Cal. 2012) (quoting Cal. Civ. Code § 3426.1(d)); *see Frazier*, 2020 WL 8410432, at *3 (noting that these elements are the same under DTSA). The second element of this definition is key: trade secrets have economic value *because* they are unknown and unknowable to someone else who might find them valuable. *See* 18 U.S.C. § 1839(3).

Here, Miranda's claim fails because what Miranda is alleging DaVita misappropriated is, quite simply, not a trade secret. Miranda asks the Court to accept the proposition that information he gathered relating to a wrongdoer's attempt to defraud his employer is a trade secret. But Miranda offers no case law (on DTSA or trade secrets more broadly), and the Court has found none, supporting this definition of a trade secret. The Court discerns at least three absurdities that arise when trying to fit the square peg of Miranda's report into the round hole of the definition of a trade secret.

First, to the extent Miranda alleges that the information he disclosed to DaVita was valuable to him because DaVita should have compensated him for it, the causal connection—the "because"—is missing from this theory. A trade secret is valuable *because* it is unknown and unknowable to others who might find it valuable. *Brocade*, 873 F. Supp. 2d at 1212. In other words, for Miranda's information to be a trade secret, there must be a causal connection between the value of the information, on one hand, and the fact that the information was unknown and unknowable to DaVita and others, on the other hand. But Miranda does not allege such a causal connection, and indeed he cannot. The information Miranda gave DaVita was not valuable *because* it was secret (from DaVita or anyone else); it was valuable because it presented certain data in a way that informed DaVita that it might be the victim of fraud.

To illustrate this point, the Court imagines a scenario where DaVita obtained the information from Miranda and then proceeded to publish an article on its own website detailing the information in Miranda's report. In such a scenario, the act of

revealing the information to the public would not have decreased the value of the information to DaVita; DaVita could have still used that information to settle its Medicare dispute with the Department of Justice, (FAC ¶ 22), or to prevent it from being defrauded by a merger target, (FAC ¶ 33). Even if DaVita had been willing to pay Miranda for the information, that fact would not alter the source of the information's value. The source of the information's value was not its secrecy; it was that it alerted DaVita to financial harm DaVita might have suffered as a result of the fraud of a merger target.

Second, Miranda cannot plead around the fact that he disclosed the information to DaVita, meaning he, its owner, did not "attempt[] to keep [it] secret." *Brocade Commc'ns*, 873 F. Supp. at 1212. As alleged, Miranda voluntarily disclosed his research to DaVita and only later asked for compensation. The mere fact that an individual is in possession of information that is valuable to an entity and the entity would ostensibly be willing to pay the individual for the information does not give the information value *as a trade secret*. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221 (2010) (discussing concept of trade secret and observing that "[t]rade secret law, in short, protects only *the right to control the dissemination of information*"), *disapproved on other grounds in Kwikset v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

Third, and finally, there is no indication DaVita, by its own ordinary, proper means, could not have discovered the information Miranda gave it. 18 U.S.C. § 1839(3). The financial statements analyzed in Miranda's Report were accessible to DaVita and its employees, and DaVita hired an accounting firm to investigate the very same financial statements. (*See* FAC ¶ 16.) That DaVita could have discovered the information with ordinary research of information already available to it further indicates the information is not a trade secret.

Confirming this analysis is the DTSA's definition of "trade secret," which includes as examples "patterns, plans, compilations, program devices, formulas,

designs, prototypes, methods, techniques, processes, procedures, programs, or codes." 18 U.S.C. § 183(3). Information possessed by an employee regarding fraud by a company with whom the employer is merging is too far afield from any of these examples to qualify as *the employee's* trade secret. Conversely, that the Report may have contained HealthCare Partners' methods, procedures, or the like is of no moment, because if that were the theory, the trade secret would be HealthCare Partners,' not Miranda's. *See* 18 U.S.C. § 1839(4) (restricting DTSA claimants to "owners" of trade secrets, defined as "the person . . . in whom . . . rightful legal or equitable title to, or license in, the trade secret is reposed").

For these reasons, the Court **DISMISSES** Miranda's first claim for violation of the Defend Trade Secrets Act. The dismissal is supported by two independent bases: the running of the statute of limitations and the lack of a trade secret. Both these bases are fundamental flaws with the claim around which the Court sees no way to plead. Accordingly, the Court finds amendment would be futile and dismisses the first claim against DaVita **WITHOUT LEAVE TO AMEND**. *Carrico*, 656 F.3d at 1008.

**C. Thiry and HealthCare Partners**

The Court proceeds to address the claims against Thiry and HealthCare Partners before returning to the remaining claims against DaVita. Miranda previously dismissed Thiry and HealthCare Partners from the initial Complaint without prejudice, but he named them again in the FAC. However, nothing in the record suggests that Miranda served either Thiry or HealthCare Partners with the FAC. Because Miranda had already dismissed Thiry and HealthCare Partners from the action by the time he filed his FAC, the mere filing of the FAC did not effect service upon Thiry and HealthCare Partners. Instead, Miranda was required to formally serve Thiry and HealthCare Partners to bring them back into the action, and the record is devoid of any indication he did so. The record further suggests that no Defendant was properly served with the initial Complaint, and that service of the FAC was good as on DaVita only because the Court deemed it so. (*See* Min. Order, ECF No. 50 (observing

Miranda failed to serve DaVita within Rule 4(m) period and waiving failure pursuant to DaVita's stipulation).)

While Rule 4(m) does not speak specifically to this situation, courts often apply Rule 4(m)'s ninety-day service deadline when plaintiffs add brand new parties by way of an amended complaint, and the Court sees no reason not to apply the same deadline in the present situation. Under Rule 4(m), Miranda's deadline for serving Thiry and HealthCare Partners with the FAC was June 22, 2021. Moreover, in the earlier stages of these proceedings, the Court gave Miranda two extensions of time under Rule 4(m) to serve Defendants. (ECF Nos. 7, 14.) Miranda's continued attempts resulted only in improper service, and the Court granted Miranda leniency in deeming service on DaVita to be effectuated. Since these events transpired, Miranda made no additional effort to effect service on either Thiry or HealthCare Partners.

The Court finds that Miranda's time for serving Thiry and HealthCare Partners, whether that time is measured by Rule 4(m) or by equitable principles, has passed. Accordingly, the **DISMISSES** Thiry and HealthCare Partners from the action **WITHOUT PREJUDICE** for failure to effectuate timely service.

This leaves only the state-law claims against DaVita. (FAC ¶¶ 52–124.) Because the Court's jurisdiction over this matter is based only on a federal question, the dismissal of the DTSA claim means that the Court possesses only supplemental jurisdiction over the remaining claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996). The Court **DECLINES** to exercise supplemental jurisdiction over these claims and **DISMISSES** the state-law claims against DaVita **WITHOUT PREJUDICE**.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** DaVita's Motion to Dismiss by **DISMISSING** Claim One against DaVita **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**. (ECF No. 56.) The Court declines to exercise

supplemental jurisdiction over the remaining claims against DaVita and accordingly **DISMISSES** those claims **WITHOUT PREJUDICE**.

The Court **DISMISSES** all claims against Thiry and HealthCare Partners **WITHOUT PREJUDICE** for failure to effect timely service.

The Court will issue Judgment.

**IT IS SO ORDERED.**

December 2, 2021

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**